UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:02CR323(MRK) |
| | : | |
| v. | : | |
| | : | |
| HUMBERTO ZARABOZO | : | JANUARY 26, 2007 |

**GOVERNMENT'S MEMORANDUM IN AID OF
VIOLATION OF SUPERVISED RELEASE PROCEEDING**

The government submits this memorandum in connection with the upcoming violation of supervised release proceeding scheduled in this matter on Friday, February 9, 2007 at 2:00 p.m., simply to provide some additional background information to the Court about the underlying case, given the recent transfer of the matter from Senior United States District Judge Dominic J. Squatrito.

*Factual Background*

From in or about December 2000 through in or about April 2001, the defendant, Humberto Zarabozo ("Zarabozo") cashed a little over seventy (70) counterfeit checks, totaling over $30,000, all of which purported to be payroll checks from his former employers, Diversified Employment Services, Inc. and Southwick & Meister, Inc.

Specifically, Zarabozo used computer resources at a public library, and using a so-called "versa checks" program, he created and negotiated several checks that purported to be payroll checks from his former employers. Zarabozo negotiated and cashed seventy-four (74) such checks at various locations.

On November 12, 2002, Zarabozo waived indictment and pleaded guilty to a one count information charging him with bank fraud in violation of Title 18 U.S.C. §1344. The offense of

conviction involved the defendant's creating, forging and cashing six (6) such counterfeit checks totaling $3,140.79 at the Central Connecticut Healthcare Credit Union in Meriden, each of which purported to be payroll checks of one of his former employers, when, in fact, the checks were counterfeit checks that the defendant had created on a computer.

Specifcally, with respect to the one-count information to which Zarabozo pleaded guilty, Zarabozo created and cashed the following checks at the Central Connecticut Healthcare Credit Union:

(1) January 27, 2001 – Check No. 298475, dated 1/25/01, in the amount of $429.35, drawn on the Connecticut Bank of Commerce Account of Diversified Employment Services, Inc., Account No. 2010915.

(2) January 29, 2001 – Check No. 298472, dated 1/25/01, in the amount of $310.25, drawn on the Connecticut Bank of Commerce Account of Diversified Employment Services, Inc., Account No. 2010915.

(3) January 29, 2001 – Check No. 298476, dated 1/25/01, in the amount of $389.89, drawn on the Connecticut Bank of Commerce Account of Diversified Employment Services, Inc., Account No. 2010915.

(4) January 31, 2001 – Check No. 299472, dated 1/30/01, in the amount of $1,050.70, drawn on the Connecticut Bank of Commerce Account of Diversified Employment Services, Inc., Account No. 2010915.

(5) January 31, 2001 – Check No. 299473, dated 1/30/01, in the amount of $525.35, drawn on the Connecticut Bank of Commerce Account of Diversified Employment Services, Inc., Account No. 2010915.

(6) February 7, 2001 – Check No. 23679, dated 2/2/01, in the amount of $435.25, drawn on the Connecticut Bank of Commerce Account of D.E.S. INC., Account No. 0915.

The deposits of the Central Connecticut Healthcare Credit Union were federally insured at the time by the National Credit Union Administration ("NCUA").

Zarabozo's relevant offense conduct, however, included sixty-eight (68) additional counterfeit checks. The remaining checks were cashed at check cashing entities; retail establishments and another bank.

Specifically, between December 2000 through January 2001, Zarabozo cashed nine (9) checks, totaling $4,082.69 at a "Check Stop, Inc." location in Meriden, Connecticut. Those checks were drawn on the Connecticut Bank of Commerce Account of Diversified Employment Services, Inc., Account No. 2010915.

On January 11, 2001, Zarabozo also cashed one check in the amount of $403.76 at a "Liberty Cash a Check." That check was also drawn on the Connecticut Bank of Commerce Account of Diversified Employment Services, Inc., Account No. 2010915.

In March 2001, Zarabozo also cashed thirty-two (32) checks, totaling $14,893.46 at an A & P Food Mart. Those checks were drawn on the Connecticut Bank of Commerce Accounts of Diversified Employment Services, Inc., Account Nos. 2010915 and 2030915.

On March 4 and 5, 2001, Zarabozo also cashed two (2) checks, totaling $805.60 at a People's Bank in Meriden, Connecticut, a financial institution the deposits of which were then federally insured by the Federal Deposit Insurance Corporation ("FDIC"). Specifically, on March 4, 2001, Zarabozo cashed a forged paycheck in the amount of $525.75 that purported to be a payroll check from another former employer, Southwick & Meister, Inc. That check was drawn on the Fleet Bank Account of Southwick & Meister, Account No. 94017 33337. On March 5, 2001, Zarabozo also cashed a check in the amount of $279.85 that purported to be a payroll check from his former employer, Diversified Employment Services, Inc. That check was drawn on the Connecticut Bank of Commerce Account of Diversified Employment Services, Inc., Account No. 2010915.

On March 26, 2001, Zarabozo also cashed a check in the amount of $450.00 at a Waldbaum's supermarket store. That check was also drawn on the Connecticut Bank of Commerce Account of Diversified Employment Services, Inc., Account No. 2030915.

In April 2001, Zarabozo also cashed six (6) counterfeit checks, totaling $1,105.42 at a "Pizza Wizard" store. Those checks were drawn on the Connecticut Bank of Commerce Account of Diversified Employment Services, Inc., Account No. 2030915.

The remaining seventeen (17) checks totaled $5,753.37, and were also drawn on the Connecticut Bank of Commerce Account of Diversified Employment Services, Inc., Account No. 2030915.

On or about June 5, 2002, FBI agents interviewed Zarabozo, at which time Zarabozo waived his rights and gave a signed statement, confessing to creating and cashing the forged checks. At the time of his plea and in preparation for sentencing, a copy of Zarabozo's confession and the FBI's report from that interview were provided to Probation.

The government also provided Probation with copies of two reports detailing the counterfeit checks that Zarabozo cashed. One report was sorted by check number, while the other was sorted by the location at which the checks were cashed. It was evident from the reports that Zarabozo often generated checks for the same amount and bearing the same number, and would either cash these duplicate checks at different locations or even cash them at the same location, but on different days. It was also evident from the reports that Zarabozo would often cash several checks in one day, whether at the same or different locations.

*Procedural Background*

As noted above, on November 12, 2002, Zarabozo waived indictment and pleaded guilty to a one-count information charging him with bank fraud in violation of Title 18 U.S.C. §1344.

The United States Probation Office subsequently prepared a Presentence Report ("PSR") in which it determined that the total loss attributable to Zarabozo – including not only the loss resulting from the conduct alleged in the information but also the loss resulting from relevant conduct at other check cashing locations – amounted to $30,635.09. (PSR ¶ 6). Initially, the defendant disputed the actual amount of the loss, claiming that the total amount of checks that the defendant actually cashed was $24,881.72. (Second Addendum to PSR). This issue was the result of ambiguities in the aforementioned computer spread sheet that seemed to indicate that certain checks were not, in fact, cashed. However, the parties later determined that the reason that the spread sheet did not reflect the date and place of the cashing of these checks was simply because copies of the backs of the checks were not available. There was additional evidence, however, that the checks were in fact presented to the employers' banks and paid. Accordingly, it was ultimately agreed by the parties that the actual loss amounted to $30,874.90 and Zarabozo did not dispute this figure as representing the actual loss. (Third Addendum to PSR); see also Appellant's Brief in Support of Motion to Withdraw Pursuant to Anders v. California at 3-4.

The Probation Office ultimately determined that Zarabozo's offense conduct and relevant conduct included approximately seventy forged and counterfeit checks totaling $30,874.90. (Third Addendum to PSR). Using U.S.S.G. §2B1.1 – the sentencing guideline range applicable to a violation of 18 U.S.C. §1344 – the Probation Office determined that Zarabozo's base offense level was six, with six levels added pursuant to §2B1.1(b)(1)(D) to reflect a loss amount between

$30,000 and $70,000.  Zarabozo was given credit for acceptance of responsibility, resulting in a total adjusted offense level of 10.

At the time of sentencing, Zarabozo's criminal history included the following.  Zarabozo had October 2002 convictions for Threatening in the Second Degree and Failure to Appear in the Second Degree, for which he was sentenced to three months in prison, suspended, with a one year conditional discharge.  Zarabozo also had a 1998 conviction for Larceny in the Third Degree and Larceny in the Fourth Degree, for which he received one year in jail, suspended, with a sentence of three years probation.  Zarabozo also had a 1988 conviction for violation of probation for which he received a sentence of imprisonment of 18 to 24 months.  Additional criminal history points were also applicable because Zarabozo's federal offense was committed while Zarabozo was subject to state probation.  In short, Zarbozo's criminal history category was determined to be V, resulting in a suggested guidelines imprisonment range of 21 to 27 months and a fine between $2,000 and $20,000.  (PSR ¶¶ 103; 109).

On February 10 and February 18, 2003, sentencing proceedings were held before Judge Squatrito.  During those proceedings, the Court adopted the findings set forth in the PSR as its factual findings and determined that the defendant had a total offense level of 10 and a criminal history category of V.  The defendant did not dispute the court's findings.

Zarabozo, however, moved for a downward departure, in reliance on <u>United States v. Kaye</u>, 140 F.3d 86 (2d Cir. 1998) and pursuant to §5K2.0 of the Sentencing Guidelines, claiming that he had provided substantial assistance to state and local authorities in connection with the investigation and prosecution of others.  A sentencing memorandum was submitted in support of the request, along with certain state and local police reports that set forth the extent of Zarabozo's assistance.

At the initial sentencing hearing held on February 10, 2003, the government opposed the departure on the basis that the defendant's claimed cooperation was not substantial. The Court continued the sentencing until February 18 at which time Zarabozo presented additional reports setting forth his assistance with local authorities.

At both the February 10 and February 18 hearings, the court expressed concern over Zarabozo's admitted drug addiction and expressed its desire to have the defendant participate in the Bureau of Prison's 500 hour drug treatment program. The court also expressed concern over the fact that Zarabozo had forged and cashed the counterfeit checks during the period of time that he was purportedly lending substantial assistance to state and local authorities.

After reviewing the defendant's submissions, and considering the arguments of counsel at both the February 10 and February 18 hearings, Judge Squatrito denied the defendant's motion and declined to depart downward. The court sentenced Zarabozo to 21 months incarceration, followed by three years of supervised release – the low end of the applicable guideline range. The court imposed no fine, but ordered restitution in the amount of $3,140.79, the amount alleged in the count of conviction.

Zarbozo timely filed a Notice of Appeal on February 21, 2003. Zarabozo's appeal was subsequently disposed of by the Second Circuit following the submission of a motion by defense counsel to withdraw pursuant to Anders v. California, 386 U.S. 738 (1967) and a corresponding motion and memorandum by the government seeking a summary affirmance.

Zarabozo's term of supervised release began on July 1, 2004 and was scheduled to terminate on June 30, 2007.

*Conclusion*

As noted above, the purpose of the government's memorandum is simply to provide the Court with some additional procedural information and background about the underlying case, given the recent transfer of the matter from Senior United States District Judge Dominic J. Squatrito. The government intends to articulate its position and proposed resolution of the alleged violations of supervised release at the hearing scheduled for February 9, 2007.

                                              Respectfully submitted,

                                              KEVIN J. O'CONNOR
                                              UNITED STATES ATTORNEY

                                              STEPHEN B. REYNOLDS
                                              ASSISTANT UNITED STATES ATTORNEY
                                              FEDERAL BAR NO. ct19105
                                              UNITED STATES ATTORNEY'S OFFICE
                                              915 LAFAYETTE BOULEVARD
                                              BRIDGEPORT, CT 06604
                                              (203)696-3000
                                              (203)579-5575 (fax)
                                              Stephen.Reynolds@usdoj.gov

**CERTIFICATE OF SERVICE**

This is to certify that on Friday, January 26, 2007 a copy of the foregoing memorandum was forwarded to:

Thomas G. Dennis, Esq.
Federal Public Defender
10 Columbus Boulevard, 6th Floor
Hartford, Connecticut 06106-1976

This is also to certify that a courtesy copy of the foregoing memorandum was forwarded on January 26, 2007 to:

Deborah S. Palmieri
United States Probation Officer
U.S. Probation Office
157 Church Street
New Haven, Connecticut 06510

The Hon. Mark R. Kravitz
United States District Judge
United States Courthouse
141 Church Street
New Haven, Connecticut 06510

_____
STEPHEN B. REYNOLDS
ASSISTANT UNITED STATES ATTORNEY