UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO.: 3:02CR323(MRK) |
| VS. | : |
| HUMBERTO ZARABOZA | : FEBRUARY 7, 2007 |

### DEFENDANT'S MEMORANDUM IN AID OF
### VIOLATION OF SUPERVISED RELEASE PROCEEDING

The following discussion of points and authorities is submitted on behalf of Humberto Zaraboza to assist the Court in fashioning an order that addresses the Defendant's violations and conditions of supervised release so as to provide him with a foundation which will aid him to obtain proper diagnosis and treatment for his psychological and mental health issues, as well as continued treatment for his long-standing drug and alcohol addiction. Neither the law nor the factors set forth in §3553(a) require imprisonment of the Defendant.

In fact, given the availability of appropriate substance abuse programs and the Defendant's current and past participation in such programs, this Court can fashion an order which enables him to address the issues which are largely responsible for his violations of supervised release. In addition, an examination and consideration of the factors under 18 U.S.C. 3553(a) require such a result to achieve the purposes of sentencing, deterrence, respect for the law and rehabilitation of the Defendant.

## *THE ORIGINAL OFFENSE*

During the period from December, 2000 through April, 2001, the Defendant cashed checks he had counterfeited. The checks purported to be payroll checks from two of his former employers, Diversified Employment Services, Inc., and Southwick & Meister, Inc. On November 12, 2002, the Defendant waived indictment and pleaded guilty to One Count of bank fraud in violation of Title 18 U.S.C. §1344. The offense the Defendant pleaded to involved six counterfeit checks totaling $3,140.79 which were cashed at the Central Connecticut Healthcare Credit Union in Meriden.

The amount of counterfeit checks cashed by the Defendant totaled $30,635.09 (PSR par. 6), a figure ultimately agreed to by the Defendant.

The Sentencing Court determined that the Defendant's base offense level was six under U.S.S.G. §2B1.1. To that, six levels were added pursuant to §2B1.1(b)(1)(D) for the amount of loss and two levels deducted for acceptance of responsibility for a total adjusted offense level of 10.

The Defendant had a criminal history category of V and, after two sentencing hearings, the Defendant was sentenced to 21 months incarceration, followed by three years of supervised release. The Court further ordered restitution in the amount of $3,140.79 at the rate of $100.00 per month.

Sentencing Judge Squatrito expressed concern as a result of the Defendant's admitted addiction and recommended to the Bureau of Prisons that the Defendant participate in its 500 hour

drug treatment program.

The Defendant's term of supervised release began on July 1, 2004 and was scheduled to terminate on June 30, 2007.

## *THE COMMENCEMENT OF THIS PROCEEDING*

During the course of his supervised release, the Defendant was supervised by Senior United States Probation Officer Deborah A. Palmieri. On January 10, 2007, Ms. Palmieri submitted a petition citing the Defendant for violating four separate conditions of his supervised release and asking that the Court order the Defendant to appear to show cause why his supervision should not be revoked. The Petition was signed by Judge Squatrito on January 10, 2007 and, as a result, this proceeding has been scheduled.

## *THE ALLEGED VIOLATIONS*

1.    Probation Officer Palmieri has cited the Defendant for violating the order of restitution since he has only paid four $100.00 restitution payments since July 1, 2004, the day of his release from prison.

2.    The Defendant is also accused of violating the condition of supervised release that he "refrain from the unlawful use of a controlled substance" by testing positive for cocaine on January 4, 2005 and February 3, 2005 and admitting cocaine and marijuana use several days prior

to office visits on May 22, 2006 and June 6, 2006 and cocaine use prior to an August 8, 2006 visit.

    3.    The Defendant is further accused of violating the condition that he "shall report to the Probation Officer and shall submit a truthful and complete written report within the first five days of each month" by failing to report on April 20, 2006, June 15 and 22, 2006, August 24, 2006, September 5, 2006, October 5, 2006 and November 7 and 16, 2006 and by not submitting monthly supervision reports for July, September, October and November, 2006.

    4.    The Defendant is further accused of violating the condition that he " notify the Probation Officer 10 days prior to any change in residence or employment" by not reporting four employments during 2005 and 2006.

The Report of Violation of Supervised Release filed on December 13, 2006 by Ms. Palmieri reports that the Defendant has been otherwise compliant with the remaining conditions of his supervised release. He has not been arrested nor has he absconded from supervision. He has worked for much of his supervision.

### *THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT*

The Defendant has profound mental health issues. He has been diagnosed with a variety of psychiatric conditions.

From August 26, 2000 until August 31, 2000, the Defendant was an inpatient at Saint Francis

Care Behavior Health (formerly "Elmcrest") in Portland, Connecticut. There, he was diagnosed with major depression and poly-substance dependence (PSR par. 62).

Prior to the SFCBH admission, he was seen at Midstate Behavioral Health for depression and suicidal ideations. At that time, he reported auditory hallucinations. During that time, he was on Prozac, 20 mg., a day and Klonopin 1 mg., three times a day. He was later diagnosed at MBH with bi-polar disorder and was prescribed Xanax. He also recalls having been diagnosed by one health professional with schizophrenia.

Since his release from incarceration, the Defendant, on his own initiative obtained mental health treatment and actually completed a program at Rushford Treatment Center in Meriden on October 14, 2005. This was a dual diagnosis program dealing with both his mental health and substance abuse problems.

The Defendant reports that he actually attempted to participate in the other programs recommended by Probation, but those attempts were a disaster. Under pressure, the Defendant becomes extremely scattered in his thinking. His failure to comply with Probation's treatment recommendations and other conditions of supervision occur not as a result of his disrespect or disregard of the supervision process or the law, but rather because he has transportation problems, extreme anxiety and the inability to multi-task or solve problems associated with obtaining

5

information for care providers or SAGA interviewers. His admission into said programs or his obtaining of the benefits which would enable him to pay for them have not proceeded as smoothly as it would for one who does not have his problems.

His substance abuse problems stem from an early age. They were acknowledged by Judge Squatrito who recommended the 500 hour BOP Program. The Defendant was not eligible for that program because his sentence was too short, but he indicates that he did successfully complete several prison substance abuse programs and also attended some mental health programs while in prison.

He desires help for the mental health issues associated with his depression and bipolar disorder.

The Defendant has indicated that he fights his addiction each day and has been successful for the most part, but, as this Court well knows, relapses are not uncommon and the Defendant has suffered those which are the basis for this proceeding.

He is presently meeting with Chris Solania, a Registered and Licensed Drug and Alcohol Abuse Counselor. A recent conversation with Ms. Solania revealed her opinion that the Defendant was sexually abused as a child and that his addiction is related to a post-traumatic stress disorder. She believes that the Defendant is motivated and needs mental health treatment.

6

The Defendant needs guidance and help in actually enrolling in the programs and enrolling in SAGA which would aid him to pay for the help that he needs. He also has ongoing transportation problems which has caused him to miss a substantial number of visits both with his Probation Officer and with care providers. Transportation help would also probably insure compliance.

The needs of the Defendant are acknowledged by Probation Officer Palmieri who believes that the Defendant is not deliberately avoiding compliance. She knows from her interaction with the Defendant and from her observations of him that he is disorganized and has a scattered approach to life. The Defendant becomes overwhelmed with the demands of supervision and has trouble complying because of his anxiety and his inability to function under pressure.

The Defendant is not a violent person and is not a danger to society. He does possess respect for the law and has a desire to shake the mental health and substance abuse issues which still cause him to have suicidal thoughts. He is also profoundly depressed.

### *SENTENCING INFORMATION*

Under 18 U.S.C. §3583(e)(3), because the original offense was a Class B Felony, the maximum term of imprisonment that may be imposed is three years upon a finding of violation and revocation.

Since, the original offense was a Class B Felony, the maximum term of supervised release

7

that may be reimposed is five years less any term of imprisonment that is imposed under 18 U.S.C. §3583(b)(1).

The alleged violations of supervised release are also subject to the provisions of Chapter 7 of the *United States Sentencing Guidelines*, November 1, 2006 Edition. The provisions of Chapter 7 with regard to supervised release, are merely commentary and it is acknowledged by the commission that the process of supervised release and its incorporation into the Sentencing Guidelines is an evolutionary process waiting input from judges, probation officers and other persons. Also, post-<u>Booker</u>, even if Chapter 7 contained so-called "Guidelines", they would only be advisory and not binding on this Court. This Court can fashion a sentence outside the provisions of Chapter 7 if it feels that that would be a reasonable disposition and if it also determines that the factors under §3553(a) require such a result.

The Chapter 7 provisions state that based upon a Grade C violation, which the Defendant claims these violations are, combined with an original criminal history category V, the revocation Guideline range of imprisonment if the Court should consider imprisonment is 7 to 13 months under §7B1.4.

In addition, under §7B1.3(c)(2), since the minimum term of imprisonment determined under §7B1.4 is more than six months, but not more than 10 months, the minimum term may be satisfied

8

by either a straight imprisonment or a sentence of imprisonment or one that includes a term of supervised release with a condition that substitutes community confinement or home detention, provided that at least one-half of the minimum term is satisfied by imprisonment.

The Court is again reminded that these provisions are not even Guidelines, but only commentary and that the process is still evolving. The Court can ignore the provisions of Chapter 7 of the Guidelines and fashion its own "non-Chapter 7" sentence which will accomplish the purposes set forth in §3553(a) considering all the factors contained therein. The Court is further directed to Note 6 in the Application Notes to §7B1.4 which indicates that in the case of a defendant who fails a drug test, the Court "shall consider whether the availability of appropriate substance abuse programs, or defendant's current or past participation in such programs, warrants an exception from the requirement of mandatory revocation and imprisonment under 18 U.S.C. §3583(g)and (d)".

The Defendant suggests that the violations which are alleged against him do not require revocation of the term of supervised release under any statutes which have the force of law. Mandatory revocation is only required if the defendant is in possession of a controlled substance. For all offenses of drug possession committed after September 13, 1994, the Court is required to sentence the defendant to a term of imprisonment "not to exceed the maximum term of imprisonment authorized under Subsection (e)(3)" §3583(g). Some Circuits have ruled that evidence

of drug use can equal possession. The Second Circuit is one. See, United States v. Wirth, 250 F. 3d 165 (2d Cir. 2001). Other courts have held otherwise. United States v. White, 770 F. Supp. 503 (W.D. Mo. 1991). Wirth acknowledges the viability of an exception to revocation and thus alternatives to imprisonment under §3583(d) if the Court finds it appropriate.

With regard to drug testing, on November 2, 2002, Congress added §3583(g)(4) to the provisions of §3583 which section requires revocation when a defendant tests positive for drug use more than three times in a one year period. That is not the case with regard to the Defendant. He did not test positive for drug use more than three times during a one year period even using his admissions as the equivalent of a test failure.

Also, it does not matter the number of times that a defendant fails a drug test. The Court can, if it feels that imprisonment is appropriate, sentence a defendant to incarceration. However, in the case of any defendant who fails a drug test, the Court is mandated to first consider whether the availability of drug treatment programs, or the defendant's past or present participation in said programs, warrants an exception to the mandatory revocation and imprisonment requirement. §18 U.S.C. 3583(d); U.S.S.G. §7B1.4 at Note 6; United States v. Pierce, 132 F. 3d 1207 (8th Cir. 1997). Thus, there is no requirement of mandatory revocation with regard to the Defendant's admission of drug use on the occasions set forth in the Violations Statement and the test failures on the dates set

forth in that Statement.

This Court is free to fashion its own disposition relying on the factors set forth in §3553(a) recommendations and arguments of counsel and a colloquy with the Defendant. The Defendant submits that this is not a case where incarceration will serve any purpose other than to deprive the Defendant of his ability to successfully reintegrate into society and achieve mental health and a drug free lifestyle.

### *THE PROBATION DEPARTMENT'S EXPECTED RECOMMENDATION*

Probation Officer Deborah Palmieri is expected, based on her evaluation of the Defendant and the reasons for his non-compliance, to recommend that this Court establish the terms and conditions of the Defendant's supervised release as follows:

1. Require him to reside in the Hartford Half-Way House for four months;

2. Refer him to the Wheeler Clinic in Hartford where he would be evaluated for mental health and drug problems;

3. Participation in whatever treatment is recommended as a result of these evaluations;

4. Remain on supervised release for a period of one year;

5. Enroll in whatever financial program will provide and insure payment for these services.

This recommendation will provide the Defendant with a foundation from which to attend evaluations and treatment, as well as fulfill other conditions in a structured setting where guidance and advice would be readily available. The Defendant has previously been in a half-way house and is familiar with the structure of such a living environment.

The Defendant is agreeable to and welcomes such structure since he realizes that he needs it to get himself together and on the right path to a fruitful life. The Defendant expresses no opinion as to the method by which the Court should achieve this end. It is thought by the Defendant that this could be achieved either by modifying the terms of supervised release or revoking the term of supervised release, providing for half-way house confinement only and extending supervised release for an additional year. The accomplishment by the Court of such a structure would serve the purposes of sentencing. It would provide respect for the law since the Defendant would be mandated to finish the conditions of his supervised release in a structured setting. It would provide deterrence for those who disregard the conditions of supervised release and, most importantly, it would rehabilitate the Defendant. Reintegrating of prisoners into society is often hampered by ruts in the road. This disposition would help fill in those ruts and hopefully allow the Defendant to proceed forward in a confident manner with the help that he needs to become a productive member of society.

## *CONCLUSION*

The Defendant urges this Court to adopt the Probation Department's recommendation. The Defendant's need for and willingness to participate in the recommended programs justify an exception to any mandatory imprisonment required as a result of the Defendant's use of drugs and/or any failed drug tests or other violations of his supervised release.

Upon consideration of the factors set forth in 18 U.S.C. §3553(a), this Court should adopt the recommendations of the Probation Department since the Defendant is in need of help with mental help and substance abuse issues. He has shown a desire for such help and such help is readily available. The Defendant is not a violent person and there is no evidence that he is a threat to others. He has not been arrested since his release from prison and has worked steadily. Prison will not help society and most certainly will not help this Defendant.

THE DEFENDANT, HUMBERTO ZARABOZA

/s/
ROBERT C. MIRTO
ct00188
Mirto, Ketaineck & DiCrosta, P.C.
140 Captain Thomas Blvd., P.O. Box 428
West Haven, CT 06516
Telephone (203)932-2225
Fax (203)934-4834
E-mail: bob@mkbd.com

## *CERTIFICATION*

This will certify that a copy of the Defendant's Memorandum in Aid of Violation of Supervised Release Proceeding was sent to Stephen B. Reynolds, Assistant United States Attorney, Office of the U.S. Attorney, 915 Lafayette Boulevard, Bridgeport, Connecticut 06604; Thomas G. Dennis, Esq., Federal Public Defender, 10 Columbus Boulevard, 6th Floor, Hartford, Connecticut 06106; Deborah S. Palmieri, United States Probation Officer, United States Probation Office, 157 Church Street, New Haven, Connecticut 06510; and the Hon. Mark R. Kravitz, Judge, United States District Court, 141 Church Street, New Haven, Connecticut 06510 on this 7th day of February, 2007.

/s/ _____
ROBERT C. MIRTO

15

Case 3:02-cr-00323-MRK    Document 30    Filed 02/07/2007    Page 15 of 15